Ada K. Wong, WSBA #45936
AKW Law, P.C.
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel.: (206) 259-1259
Attorney for Plaintiff Garcia

THE HONORABLE MARY K. DIMKE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA GARCIA,<br><br>                    Plaintiff,<br><br>v.<br><br>WALMART, INC. d/b/a WALMART #2269; WAL-MART ASSOCIATES, INC.; "DOE(S) 1-100" employees of WALMART, INC. AND/OR WALMART STORE #2269; and "CORPORATION(S) XYZ 1-100,"<br><br>                    Defendants. | Case No. 1:23-CV-03116-MKD<br><br>**AMENDED COMPLAINT**<br><br>[JURY TRIAL DEMANDED] |

COMES NOW the Plaintiff, by and through her counsel of record, in the above-entitled matter complains and alleges as follows:

## I.     PARTIES

1.     Plaintiff Andrea Garcia ("Plaintiff") is an adult citizen and resident of Yakima County and resided therein at all times material to this Complaint.

Amended Complaint
(1:22-cv-3003) - 1

**AKW LAW**, **P.C.**
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel. (206) 259-1259 / Fax (855) 925-9529

2.    Defendants WALMART, INC. d/b/a WALMART #2269 and WAL-MART ASSOCIATES, INC. (hereinafter collectively referred to as "Walmart") are, and were at all times material hereto, corporations doing business worldwide, and in Yakima County, Washington.  They employ more than 15 employees at all relevant times herein and are employers as defined in the Washington Law Against Discrimination ("WLAD"), employers as defined in Title VII of the Civil Rights Act of 1964 ("Title VII"), and covered entities as defined in the Americans with Disabilities Act of 1990 ("ADA").

3.    Defendants "Doe(s) 1-100," in doing the things complained of herein, were acting with the course and scope of their employment by Defendants WALMART, INC. d/b/a WALMART #2269 and WAL-MART ASSOCIATES, INC.

4.    Defendants "Corporation(s) XYZ 1-100" are corporations whose identities are unknown to Plaintiff at this time but in doing the things complained of herein, were acting within the course and scope of their relationship with Defendants WALMART, INC. d/b/a WALMART #2269 and WAL-MART ASSOCIATES, INC., and/or were entities involved in causing harm to Plaintiff as alleged herein.

5.    Each Defendant is, and at all times herein mentioned was, an agent of the other and acting within the course and scope of their employment with WALMART,

Amended Complaint
(1:22-cv-3003) - 2

**AKW LAW**, P.C.
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel. (206) 259-1259 / Fax (855) 925-9529

INC. d/b/a WALMART #2269 and WAL-MART ASSOCIATES, INC. in causing harm as alleged herein.

## II. <u>JURISDICTION AND VENUE</u>

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the Constitution, laws, or treaties of the United States, namely Title VII.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8.      Venue is proper under 28 U.S.C. § 1391 because WALMART, INC. d/b/a WALMART #2269 and WAL-MART ASSOCIATES, INC. operate their businesses in Yakima County, Washington, and a substantial part of the events or omissions giving rise to the claim occurred in Yakima County, which is within the district of the Eastern District of Washington at Yakima.

9.      On or about June 9, 2022, Plaintiff filed Charge No. 551-2022-05324 with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex and retaliation against Defendants.  At Plaintiff's request, on June 13, 2023, EEOC issued Plaintiff a Notice of Right to Sue, authorizing Plaintiff to "file a lawsuit against the respondent(s) on this charge under federal law in federal or state court" within 90 days.

//

Amended Complaint
(1:22-cv-3003) - 3

### III.   **FACTS**

10.   Plaintiff hereby incorporates by reference all allegations contained in paragraphs 1 through 9, above.

11.   Plaintiff started her full-time employment with Defendants WALMART, INC. d/b/a WALMART #2269 and WAL-MART ASSOCIATES, INC. (collectively "Defendant Walmart") on or about May 26, 2021, as an Overnight Stocker.

12.   Plaintiff's beginning wage was approximately $17.50 per hour.

13.   At the time Plaintiff was terminated on or about May 9, 2022, she worked full-time, and her regular rate of pay was approximately $19.86 per hour, plus benefits.

14.   On or about November 21, 2021, during a rest break, Stocker Xitlaly Jimenez told Plaintiff, and other co-workers that Stocker Jonathan Martinez sexually harassed her at work.

15.   Plaintiff, and the others present, encouraged Stocker Jimenez to report this to Supervisor Kristina Escobar.

16.   To the best of Plaintiff's knowledge, Stocker Jimenez spoke with Supervisor Escobar that same night.

17.   On or about March 14, 2022, during a lunch break, Stocker Tamera Tom told Plaintiff that Stocker Martinez sexually harassed her by approaching her from behind, grabbing her hips and pulling his hips and groin into her buttocks.

Amended Complaint
(1:22-cv-3003) - 4

18.     Plaintiff encouraged Stocker Tom to make a report.

19.     Stocker Tom told Plaintiff she was unsure, as she did not want problems.

20.     Plaintiff told Stocker Tom that there was another employee who Stocker Martinez had also harassed.

21.     Plaintiff again told Stocker Tom to report this to Defendants.

22.     On or about March 20, 2022, Plaintiff went to Supervisor Escobar's office.

23.     Plaintiff told Supervisor Escobar about the sexual harassment taking place during the overnight shift by Stocker Martinez.

24.      Plaintiff provided details from Stocker Tom without disclosing Tom's name specifically.

25.     Supervisor Escobar's replied, "Jonathan [Martinez], no.  He doesn't look like the type.  I can't see it."

26.     Plaintiff indicated she felt Supervisor Escobar was not taking this seriously and asked, "What exactly does 'the type' look like?"

27.     Plaintiff told Supervisor Escobar that this was not the first time that Stocker Martinez had sexually harassed a female employee.

28.     Supervisor Escobar told Plaintiff that this is the first time she was aware of it.

29.     Plaintiff knew that Stocker Jimenez informed Supervisor Escobar about

Amended Complaint
(1:22-cv-3003) - 5

the sexual harassment by Stocker Martinez.

30.    Plaintiff did not believe that Supervisor Escobar was taking her reports of sexual harassment seriously.

31.    Plaintiff asked where and to who she could write her concerns about the workplace sexual harassment.

32.    Supervisor Escobar said she would take care of the issue and a written report was not necessary.

33.    Plaintiff was concerned at this point for herself and her coworkers having to work with someone who had sexually harassed multiple co-workers.

34.    Plaintiff knew that Stocker Tom and Stocker Martinez were scheduled to work together.

35.    Plaintiff reported to Supervisor Escobar that Stocker Martinez would be scheduled with other co-workers that he may have sexually harassed.

36.    Supervisor Escobar indicated she could only act if she knew the identity of the victims.

37.    Plaintiff did not disclose Stocker Tom's name because she did not have permission to do so and feared retaliation for Tom.

38.    On or about March 25, 2022, Plaintiff called the Ethics hotline and reported everything that she had previously reported to Supervisor Escobar.

Amended Complaint
(1:22-cv-3003) - 6

AKW LAW, P.C.
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel. (206) 259-1259 / Fax (855) 925-9529

39. On or about April 19, 2022, Plaintiff received a voicemail from Michael Martin on behalf of Global Notification Team ("GNT") from Walmart, in reference to the report she made on March 25, 2022.

40. On or about April 25, 2022, Plaintiff was informed by Supervisor Escobar at approximately 6:15 a.m., that Plaintiff had a Zoom meeting with Walmart's Ethics Department.

41. Supervisor Escobar set Plaintiff up in a room, alone, and logged her into the meeting.

42. GNT Representative ("Rep.") Michael Martin began the meeting with Plaintiff at 6:30 a.m.

43. The meeting went through questions from GNT Rep. Martin.

44. Plaintiff provided the information he requested.

45. This included Plaintiff's full name, what was reported to Walmart's Ethics, and the names of the two employees harassed by Stocker Martinez.

46. GNT Rep. Martin told Plaintiff that an investigation into the two incidents of sexual harassment and a supervisor failing to report the sexual harassment would occur.

47. GNT Rep. Martin asked Plaintiff to not discuss their conversation with anyone.

Amended Complaint
(1:22-cv-3003) - 7

48.    On or about May 5, 2022, Plaintiff discovered that Stocker Tom was fired.

49.    On or about May 8, 2022, Plaintiff was called to Supervisor Escobar's office.

50.    Plaintiff was informed that she had five "occurrences" and was at risk of possible termination. "Occurrences" are related to attendance.

51.    Plaintiff asked what she needed to do to fix this.

52.    Supervisor Escobar said Plaintiff may be able to use accrued PTO time.

53.    Plaintiff did not believe she did have enough accrued PTO time.

54.    Supervisor Escobar asked Plaintiff why she left early on the day in question, April 28, 2022.

55.    Plaintiff told Supervisor Escobar that she was not feeling well that day.

56.    Plaintiff had informed two Team Lead's about her health that day and stated she needed to go home.

57.    Supervisor Escobar then told Plaintiff to go back to the floor and that they would "figure it out later".

58.    During the work break that day, Stocker Emily Gonzalez informed Plaintiff about her six occurrences.

59.    At or around 3:30 a.m., Plaintiff spoke with Supervisor Escobar about her last occurrence.

Amended Complaint
(1:22-cv-3003) - 8

60. Plaintiff informed Supervisor Escobar that she had enough accrued PTO hours to cover her .5 point occurrence.

61. Supervisor Escobar told Plaintiff to get ahold of her after the next rest break.

62. At or around 5 a.m., it was time for Plaintiff's second 15-minute rest break.

63. As soon as it ended, Plaintiff went to find Supervisor Escobar, as she had been instructed to, but was unable to find her and as such, returned to work.

64. At or about 6:45 am, Plaintiff had finished her area and went to find Supervisor Escobar again.

65. Plaintiff asked Supervisor Escobar if she had yet been able to check the computer regarding her occurrences.

66. Supervisor Escobar indicated she had not and can go to her office to take care of it.

67. Supervisor Escobar fired Plaintiff for her occurrences.

68. Upon information and belief, Stocker Gonzalez had more occurrences than Plaintiff but remained employed.

69. Defendant was aware that Plaintiff had reported Supervisor Escobar.

70. Upon information and belief, Supervisor Escobar acted in a fraudulent manner when terminating Plaintiff.

Amended Complaint
(1:22-cv-3003) - 9

71.    Upon information and belief, Defendants knew or should have known that Supervisor Escobar posed a risk to Plaintiff.

72.    On or about May 9, 2022, Plaintiff called GNT Rep. Martin twice and left a voicemail addressing her concerns regarding her termination and retaliation.

73.    On or about May 10, 2022, Plaintiff called GNT Rep. Martin and left another voicemail.

74.    Plaintiff then called the Walmart Ethics line directly to report the wrongful termination and retaliation and was given reference #WMT260831.

75.    On or about May 10, 2022, Plaintiff reached out to Store Manager Jandi Jones to appeal her termination.

76.    Plaintiff was unable to reach Store Manager Jones.

77.    Plaintiff asked to speak with Assistant Store Manager Shawn (last name unknown).

78.    Shawn informed Plaintiff that he stepped down from his role as Assistant Store Manager and that Store Manager Jones was out of the store for the whole week but that he would email Store Manager Jones about what Plaintiff told him.

79.    On or about May 11, 2022, Plaintiff called People Person Samantha Decker but was unable to speak with her.

80.    On or about 4 p.m. this same day, People Person Decker called Plaintiff.

Amended Complaint
(1:22-cv-3003) - 10

Plaintiff informed People Person Decker of what had happened as related to her termination.

81.    People Person Decker did not understand why Supervisor Escobar would not apply Plaintiff's available PTO hours to the occurrence.

82.    People Person Decker told Plaintiff she would look into it.

83.    Plaintiff told People Person Decker she believed that Supervisor Escobar terminated her employment because she reported Supervisor Escobar to Walmart Ethics after refusing to take her reports of the sexual harassment seriously.

84.    People Person Decker told Plaintiff she would email Store Manager Jones telling her that Plaintiff wished to speak with her.

85.    On or about May 15, 2022, Plaintiff and Store Manager Jones spoke about the reports and firing.

86.    Store Manager Jones said she was unsure as to why Supervisor Escobar did not take the time to adjust her occurrences when she had the available PTO.

87.    Store Manager Jones said she would look into the situation and that she had terminated Stocker Martinez.

88.    Store Manager Jones said she would speak with Supervisor Escobar and get back to Plaintiff.  This did not happen.

//

Amended Complaint
(1:22-cv-3003) - 11

AKW LAW, P.C.
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel. (206) 259-1259 / Fax (855) 925-9529

## IV.    FIRST CAUSE OF ACTION

## (TITLE VII – RETALIATION)

89.    Plaintiff hereby incorporates by reference all allegations contained in paragraphs 1 through 88 above.

90.    Defendants retaliated against Plaintiff because of Plaintiff's protected activities in violation of Title VII.

91.    As a direct and proximate cause of Defendants' actions, including termination of Plaintiff, Plaintiff incurred non-economic and economic damages, including but not limited to lost wages, future wage loss, loss of health and other benefits, loss of earning capacity, mental distress, physical damages, emotional distress, and pain and suffering, in an amount to be proven at trial.

92.    The conduct of Defendants, and each of them, was done in reckless and conscious disregard of Plaintiff's statutory rights and in conscious disregard of the pain and suffering it was bound to inflict upon Plaintiff for which an award of punitive damages is mandated against each Defendant.

93.    All Defendants are liable for said conduct under both vicarious liability and on an agency relationship.

//

//

Amended Complaint
(1:22-cv-3003) - 12

## SECOND CAUSE OF ACTION

## (WLAD – RETALIATION)

94.    Plaintiff hereby incorporates by reference all allegations contained in paragraphs 1 through 93, above.

95.    Defendants terminated Plaintiff in retaliation for her protected activities in violation of the Washington Law Against Discrimination ("WLAD").

96.    As a direct and proximate cause of Defendants' deliberate actions, including termination of Plaintiff, Plaintiff incurred non-economic and economic damages, including but not limited to lost wages, future wage loss, loss of health and other benefits, loss of earning capacity, mental distress, physical damages, emotional distress, and pain and suffering, in an amount to be proven at trial.

97.    All Defendants are liable for said conduct under both vicarious liability and on an agency relationship.

## THIRD CAUSE OF ACTION

## (WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY)

98.    Plaintiff hereby incorporates by reference all allegations contained in paragraphs 1 through 97, above.

99.    A common law wrongful discharge in violation of public policy claim may be predicated on an employer's conduct contradicting the clearly articulated public

Amended Complaint
(1:22-cv-3003) - 13

AKW LAW, P.C.
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel. (206) 259-1259 / Fax (855) 925-9529

policy against discrimination declared in the WLAD. *See Roberts v. Dudley*, 140 Wn.2d 58, 77 (2000).

100. A common law wrongful discharge in violation of public policy claim may be predicated on an employer's conduct contradicting the clearly articulated public policy of protecting "employees who believe they have been discharged for reporting workplace safety concerns" declared in the Washington Industrial Safety and health Act of 1973, RCW 49.17 *et seq.* ("WISHA"). *Cudney v. Alsco, Inc.*, 172 Wn.2d 524, 531 (2011), *overruled on other grounds by Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d 268 (2015). Based on findings that "[v]iolence is an escalating problem in many health care settings in this state and across the nation," and that "health care employees face the highest rate of workplace violence in Washington state," the Washington Legislature has declared a public policy that "health care employees should be assured a reasonably safe and secure environment in health care settings." RCW 49.19.005.

101. Defendants wrongfully discharged and/or constructively discharged Plaintiff for reporting sexual harassment in violation of the public policies declared in the WLAD.

102. As a direct and proximate cause of Defendants' wrongful discharge and/or constructive discharge of Plaintiff, Plaintiff incurred non-economic and economic damages, including but not limited to lost wages, future wage loss, other benefits, loss

Amended Complaint
(1:22-cv-3003) - 14

of earning capacity, mental distress, physical damages, emotional distress, and pain and suffering, in an amount to be proven at trial.

103.    All Defendants are liable for said conduct under both vicarious liability and on an agency relationship.

## FOURTH CAUSE OF ACTION

## (NEGLIGENT SUPERVISION AND HIRING AND FAILURE TO TRAIN)

104.    Plaintiff hereby incorporates by reference all allegations contained in paragraphs 1 through 103, above.

105.    Defendants were negligent in training, hiring, managing, and/or supervising their managers, supervisors, employees, and/or agents.  Defendants were aware or should have been aware of the unlawful actions of their managers, supervisors, employees, and/or agents, and the failures to correct the wrongful conduct.

106.    As a direct and proximate cause of Defendants' negligent supervision and hiring and failure to train, Plaintiff incurred non-economic and economic damages, including but not limited to lost wages, future wage loss, other benefits, loss of earning capacity, mental distress, physical damages, emotional distress, and pain and suffering, in an amount to be proven at trial.

//

//

Amended Complaint
(1:22-cv-3003) - 15

## FIFTH CAUSE OF ACTION

### (*RESPONDEAT SUPERIOR*)

107. Plaintiff hereby incorporates by reference all allegations contained in paragraphs 1 through 106, above.

108. Defendants are liable for all actions of their employees, managers, and supervisors under the Doctrine of *Respondeat Superior.* The conduct of these employees, managers and agents was implicitly ratified by Defendants, and involved retaliation. Defendants are therefore jointly and severally liable for the conduct of these employees, managers, and agents, and for damages.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter a judgment against Defendants on his behalf for the following:

A. Special damages in an amount according to proof at trial;

B. General damages, including but not limited to physical, mental, and emotional injury resulting from the acts complained of herein;

C. Attorney's fees, prejudgment interest, costs, punitive damages, liquidated damages, and any other appropriate remedy as may be provided by law;

D. Compensation for any tax penalty associated with recovery; and

E. For such other and further relief as the court deems just and equitable.

Amended Complaint
(1:22-cv-3003) - 16

**AKW LAW**, P.C.
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel. (206) 259-1259 / Fax (855) 925-9529

**DATED** February 20, 2024.

AKW LAW, P.C.

*/s/ Ada K. Wong*
Ada K. Wong, WSBA #45936
Attorney for Plaintiff
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel.: (206) 259-1259
Fax: (855) 925-9529
E-mail: ada@akw-law.com

Amended Complaint
(1:22-cv-3003) - 17

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Clarence M. Belnavis
> Stephen M. Scott
> Stephan L. Kendall
> FISHER & PHILLIPS, LLP
> 1700 Seventh Avenue, Suite 220
> Seattle, WA 98101
> Telephone: (206) 682-2308
> Facsimile: (206) 682-7908
> Email: cbelnavis@fisherphillips.com
> Email: smscott@fisherphillips.com
> Email: skendall@fisherphillips.com
> *Attorneys for Defendants*

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED: February 20, 2024, at Seattle, Washington.

/s/ Kaila A. Stewart
Kaila A. Stewart, Paralegal

Amended Complaint
(1:22-cv-3003) - 18

**AKW LAW**, P.C.
12055 15th Ave NE, Suite 200
Seattle, WA 98125
Tel. (206) 259-1259 / Fax (855) 925-9529