FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 05, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA GARCIA,<br><br>                    Plaintiff,<br><br>    v.<br><br>WALMART INC., doing business as WALMART 2269, WAL-MART ASSOCIATES, INC.,<br><br>                    Defendants. | No. 1:23-CV-03116-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>**ECF Nos. 67, 74** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 67, and Plaintiff's Motion for Summary Judgment, ECF No. 74. The Court held a hearing on December 9, 2025. ECF No. 106. Ada Smoke and Rolf Toren represented Plaintiff. Stephen Kendall represented Defendants. The Court has reviewed the record, heard from counsel, and is fully informed. For the reasons stated on the record and as explained more fully below, the Court denies in part and grants in part both motions.

ORDER - 1

# BACKGROUND

The undisputed relevant facts are as follows.  Plaintiff was an Associate/Overnight Stocker at Walmart in Yakima, Washington.  ECF No. 97 at 2 ¶ 3.  During Plaintiff's employment, Jandi Jones was the Store Manager and Kristina Escobar was the Assistant Manager.  *Id.* at 2 ¶¶ 1-2.  In March 2022, Plaintiff reported to Assistant Manager Escobar information regarding harassment by Jonathan Mariscal that she received from coworkers.  *Id.* at 2 ¶ 4.  In March or April 2022, Plaintiff reported to Store Manager Jones that Mr. Mariscal was making associates uncomfortable; Store Manager Jones asked Plaintiff if she has spoked with Assistant Manager Escobar.  *Id.* at 2 ¶¶ 5-6.

Plaintiff subsequently reported the alleged sexual harassment and Assistant Manager Escobar's alleged failure to report this harassment to Walmart's Ethics Department.  *Id.* at 2 ¶ 7.  Ethics opened an investigation into (1) the alleged sexual harassment by Mr. Mariscal, and (2) the alleged failure to report by Assistant Manager Escobar.  *Id.* at 3 ¶ 9.  As part of the investigation, Mr. Martin asked Assistant Manager Escobar to put Plaintiff on Zoom for her interview.  *Id.* at 3 ¶ 10.  The Ethics investigation substantiated the allegations against Mr. Mariscal, who was terminated, but did not substantiate the allegations against Assistant Manager Escobar.  *Id.* at 3 ¶ 11.

ORDER - 2

Plaintiff alleges that she was terminated by Assistant Manager Escobar on May 9, 2022. *Id.* at 3 ¶ 13. Assistant Manager Escobar alleges she terminated Plaintiff on May 15, 2022, for attendance related issues. *Id.* at 3 ¶ 14. Plaintiff had five occurrences/points.[1] *Id.* Plaintiff had five attendance points because she received 0.5 points for leaving early on April 28, 2022, after she received permission from a manager. *Id.* at 4 ¶¶ 15-16. Defendants contend that the fact Plaintiff received permission to leave early did not mean that her absence was authorized or protected. *Id.* at 4 ¶ 15.

On May 14, 2022, Plaintiff called Coach Hernandez, to report that she was terminated on May 9, 2022, and that another associate with more occurrences was not terminated. *Id.* at 4 ¶ 19. Plaintiff also reported to Ethics that she was wrongfully terminated by Assistant Manager Escobar. *Id.* at 4 ¶ 20. Plaintiff reported to Store Manager Jones that she was wrongfully terminated. *Id.* at 4 ¶ 21. Store Manager Jones pulled Plaintiff's attendance records to verify their accuracy.

---

[1] Defendant's policy states that if an employee "accumulate[s] five (5) or more occurrences/points in a rolling six-month period [they] will be subject to termination." ECF No. 72-3 at 2.

ORDER - 3

# LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (citation omitted). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record, "specific facts" showing that there is a genuine dispute of material fact for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's

ORDER - 4

favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

## DISCUSSION

The parties cross-move for summary judgment as to all of Plaintiff's claims, and Plaintiff separately seeks summary judgment on Defendants' affirmative defenses. The Court first addresses Plaintiff's claims and then addresses Defendants' affirmative defenses.

### A. Retaliation – Title VII

Defendant seeks summary judgment on the retaliation claim pursuant to Title VII on the basis that "Plaintiff has no evidence to support causation. Even if she did, Defendant has irrefutable evidence of a non-retaliatory reason for Plaintiff's termination." ECF No. 67 at 9. Plaintiff, in turn, asserts that "the timing supports the causal link." ECF No. 74 at 16.

The *McDonnell Douglas* burden-shifting test applies to Title VII retaliation claims. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). To establish a prima facie case of retaliation, a plaintiff "must put forth evidence sufficient to show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity

ORDER - 5

and the employment decision." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997)). "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). "If a prima facie case is established, the burden then shifts to the employer to proffer an alternative explanation for its action, which the employee may attempt to rebut." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).

Here, the parties do not dispute that Plaintiff engaged in a protected activity when she reported sexual harassment or that she suffered an adverse employment action when she was terminated. ECF No. 67 at 9; ECF No. 74 at 15. The parties only dispute whether Plaintiff has established a "causal link" and, if so, whether Defendant has established an alternative explanation for its action and whether Plaintiff has rebutted such an explanation.

### 1. Causation

Defendant asserts that Plaintiff cannot establish causation because: (1) "Ms. Escobar was not aware, or even suspected, that Plaintiff had made a failure to report complaint regarding her," (2) "Ms. Escobar continued to approve Plaintiff's

absences *after* Plaintiff had already lodged her ethics report," (3) "Ms. Escobar did not proactively seek to terminate Plaintiff," (4) "the temporal gap between the protected activity and adverse action [is] anywhere from seven to eight weeks," and (5) "Plaintiff cannot establish that other employees who did not make a report received more favorable treatment." ECF No. 67 at 9-11. Plaintiff, in turn, asserts that Ms. Escobar fired Plaintiff seven days after her interview with Ethics and that Ms. Escobar "could have overrode Garcia's last .5 occurrence that put her over 5-point threshold, as she had done in past for other employees, or she could have elected to not fire her, as she had also done for other employees. ECF No. 74 at 16.

First, Defendant points to Ms. Escobar's deposition testimony to assert that she was not aware of the complaint against her. ECF No. 67 at 9. During her deposition, Ms. Escobar testified:

> Q Were you ever told by anybody at Walmart in 2022 That the investigation into you, your failure to report Ms. Garcia reporting to you the original harassment, was ever closed?
> A No.
> Q Were you ever told whether or not the allegations against you for failure to report were ever substantiated or unsubstantiated?
> A I didn't even know I had stuff against me. I didn't know this stuff was against me. I had no idea she reported any of this against me. I thought it was against -- all the stuff was, like, Jonathan and -- and everybody. I had no idea I was even involved in it.

ORDER - 7

Q I thought you testified that Mr. Martin had asked you during the investigation interview if Ms. Garcia had previously reported the harassment to you, right?

A Right.

Q And you're saying that he never shared with you that one of the allegations was against you for not reporting it?

A No.

ECF No. 69-2 at 8.

Plaintiff, in turn, points to the deposition testimony of both Mr. Martin and Ms. Escobar.  Mr. Martin testified:

Q  So is my understanding correct that during your interview with Ms. Escobar on April 26, 2022, you had told her that you're investigating sexual harassment in the workplace?

A  Yes.

Q  And you also told her that same day that you were investigating her failure to report when Ms. Garcia reported the sexual harassment to her, correct?

A  From what I recall, that would be right.

ECF No. 76-3 at 12.

Ms. Escobar testified:

Q  Okay.  What do you recall Mr. Martin telling you?

A  I just remember him asking – telling me if Andrea had reported it to me, and then I said yes.  And if he gave me – if she gave me names, and I told him no.

ECF No. 83-1 at 27-28.  Thus, there is a dispute of material fact as to whether Ms. Escobar knew that Plaintiff has made a complaint against her.

ORDER - 8

1    Second, Defendant asserts that Ms. Escobar continued to approve Plaintiff's

2    absences after Plaintiff had already lodged her ethics report, that "[o]n April 18,

3    2022, Ms. Escobar removed 1.5 occurrence points from Plaintiff's balance," and

4    that this "cuts against Plaintiff's argument that a retaliatory motive led to

5    Plaintiff's termination."  ECF No. 67 at 10 (citing ECF No. 69-1 at 23-24

6    (deposition testimony of Plaintiff who testified that Ms. Escobar processed her

7    April 3, 2022,[2] absence, which was after her conversation with Ms. Escobar and

8    her complaint to Ethics); ECF No. 79 at 21 (lines 89 and 93 of chart showing that

9    on April 18, 2022, Ms. Escobar approved two absences for Plaintiff—one for

10   "Protected PTO reduce to 0.5 occurrence - authorized" and one for "Prior approval

11   from manager – authorized")).  Plaintiff, in turn, asserts that Ms. Escobar was not

12   interviewed by Ethics (and learned of Plaintiff's complaint against her) until April

13   26, 2022, which is after she removed the occurrence points on April 18, 2022.

14   Thus, there is material dispute of fact as to whether Ms. Escobar knew about

15   Plaintiff's complaint against her when she removed these occurrences.

16

17

18   [2] The deposition testimony references both April 3, 2024, and April 3, 2022.  The

19   reference to April 3, 2024, appears to be a mistake, as Plaintiff was terminated in

20   May 2022.

ORDER - 9

Third, Defendant asserts that Ms. Escobar did not proactively seek to terminate Plaintiff, but did so because of a May 14, 2022, email from Mr. Hernandez that contained a list of nineteen associates with five or more occurrences.  ECF No. 67 at 10 (citing ECF No. ECF No. 79 at 16).  There is a dispute of fact as to when Ms. Escobar terminated Plaintiff.  Defendant asserts that Plaintiff was terminated on May 15, 2025.  ECF No. 67 at 10; *see also* ECF No. 79 at 17 (listing Termination Date of May 15, 2022).  Plaintiff asserts that she was terminated on May 9, 2022, *before* the email from Mr. Hernandez.  ECF No. 84 at 16 (citing ECF No. 76-4 at 9 (Plaintiff's deposition testimony that she was terminated on May 9, 2022); ECF No. 79 at 21 (chart of absences noting "Associate no longer employed" starting May 9, 2025)).  Thus, there is a material dispute of fact as to whether Ms. Escobar terminated Plaintiff before receiving this email.

Fifth, Defendant asserts that the temporal gap between Plaintiff engaging in protected activity and Plaintiff's termination is seven to eight weeks.  ECF No. 67 at 10.  Defendant relies on the date Plaintiff reported the sexual harassment to Ms. Escobar—on or about March 25, 2022, ECF No. 69-1 at 11, and the date Defendant alleges Plaintiff was terminated—May 15, 2022.  ECF No. 79 at 17.[3]

---

[3] Defendant's brief, ECF No. 67, references "2025" rather than "2022."  This appears

Defendant appears to imply that this gap prevents the Court from finding temporal proximity.

Plaintiff, in turn, asserts that Ms. Escobar did not have a reason to retaliate until she learned about Plaintiff's complaint against her during her interview with Mr. Martin.  ECF No. 84 at 17 (citing ECF No. 76-3 at 12 (Mr. Martin deposition); ECF No. 83-1 at 27-28 (Ms. Escobar deposition)).  Further, Ms. Escobar knew that Plaintiff had spoken with Ethics on May 2, 2022, as she facilitated the logistics of the interview.  ECF No. 83-1 at 25 (Ms. Escobar deposition); ECF No. 76-5 at 3 (Interview Report stating that Mr. Martin interviewed Plaintiff on May 2, 2022).  Plaintiff asserts that Ms. Escobar fired Plaintiff seven days later on May 9, 2022.  ECF No. 84 at 17 (citing ECF No. 76-4 at 9; ECF No. 79 at 21).

"Temporal proximity can stand alone as evidence of causation in retaliation contexts, but only when the temporal proximity between the employer's knowledge of the protected conduct and the adverse employment action is 'very close.'"  *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, 647 F. Supp. 3d 992, 1020 (D. Or. 2022) (citing *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (other citations omitted).  "The Ninth Circuit has considered temporal proximity of several months or less sufficient to support an inference of causation."

_____

to be a typographical error.

ORDER - 11

*Id.* (citing *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009) (two-and-one-half months); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 929 (9th Cir. 2004) (three months); *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (seven weeks); *Miller v. Fairchild Indus.*, 885 F.2d 498, 507 (9th Cir. 1989) (two months)).

Here, there is a material dispute of fact as to whether Ms. Escobar learned Plaintiff had made a complaint against her during her interview with Mr. Martin on April 26, 2022, ECF No. 76-5 at 6, and as to the date of Plaintiff's termination. Assuming Ms. Escobar did learn about Plaintiff's complaint during her interview on April 26, 2022, and terminated Plaintiff on May 9 or May 15, 2022, this is only a temporal gap of 13 to 19 days, which reasonably could establish causation.

Sixth, Defendant asserts that "Plaintiff cannot show other employees who did not make a report received more favorable treatment." ECF No. 67 at 11. In response, Plaintiff correctly argues that "comparators are not required for retaliation claims." ECF No. 84 at 17; *see Karthauser*, 647 F. Supp. 3d at 1020. Nevertheless, as noted on the record during the hearing, Plaintiff has adduced significant evidence of Defendants' managers exercising discretion to drop other employees' absence occurrences. *See, e.g.*, No. 76-1 at 32-33, 35-40; ECF No. 83-1 at 33, 37, 39, 40. These competing assessments raise questions of fact for a jury.

*2. Alternative Explanation*

ORDER - 12

Defendant asserts that even if Plaintiff has established a prima facie case of retaliation, Defendant has established "a nonretaliatory purpose for Plaintiff's termination—attendance." ECF No. 67 at 11.  Walmart's Attendance Policy states, "Each unauthorized absence will result in occurrences/points as noted in the chart below.  If you accumulate five (5) or more occurrences/points in a rolling six-month period you will be subject to termination." ECF No. 72-3 at 2.  Walmart has two types of PTO: "

> **Regular PTO** is good for just about anything, anytime—as long as you make a request and get approval before you take off.  **Protected PTO** Is intended for when you're out sick, need to care for family, or something else comes up that keeps you away, from car trouble to any other reason. Even if you use it at the last minute, it'll protect you when having an unplanned absence.

ECF No. 72-2 at 2.

Defendant asserts that between December 10, 2021, and April 28, 2022, Plaintiff had accrued 5 occurrence points:

| Date | Occurrence Points |
|------|-------------------|
| 12/10/2021 | 0.5 |
| 1/8/2022 | 0.5 |
| 1/23/2022 | 1 |
| 2/4/2022 | 1 |
| 3/6/2022 | 1 |
| 4/3/2022 | 0.5 |
| 4/28/2022 | 0.5 |
| **Total:** | **5** |

ORDER - 13

ECF No. 67 at 13 (citing ECF No 79 at 11-14; ECF No. 69-1 at 16-17 (deposition

testimony of Plaintiff regarding the five unexcused absences)).

"Plaintiff does not dispute Defendant's attendance policy or that she had

incurred 5 points at the time of her firing." ECF No. 84 at 18.  However, Plaintiff

asserts that Defendant's explanation is pretextual and that Ms. Escobar "had the

power to override occurrences, and had the power to elect to not fire an employee

despite the employee incurring 5 or more occurrences and no PPTO to cover, as

she has done in the past for other employees who did not report her to Ethics."  *Id.*

at 18-19.  Plaintiff points to the deposition testimony of Ms. Jones who testified

that in 2022 managers at her store, including Ms. Escobar, could "override

occurrence points for the associates."  ECF No. 76-1 at 34-40, 68, 74-75.  Ms.

Jones also testified that if an associate became sick during their shift and needed to

leave early but did not have enough PPTO that they could incur a 0.5 occurrence,

which a member of the management team could override.  *Id.* at 39-40.

Plaintiff also points to a chart of Ms. Gonzalez's occurrences, which show that Ms.

Escobar overrode an "ABSENT_NO_CALL" on May 25, 2022, noting "Associate

called facility directly – authorized" and an "EARLY_OUT" on December 28,

2022, noting "Prior approval from manager."  ECF No. 77 at 5-6; *see also* ECF

No. 83-1 at 33-34 (deposition testimony of Ms. Escobar regarding Ms. Gonzalez's

ORDER - 14

occurrences during which Ms. Escobar testified she dropped Ms. Gonzalez down to zero based on prior approval from manager for December 27, 2022).

Defendant, in turn, asserts that it is "misleading" for Plaintiff to assert that employees are not terminated at five occurrences.  ECF No. 87 at 7.  "Ms. Jones referred to newer employees 'who did not know about' leaves of absence, employees who took sick leave but 'didn't call," employees who qualify for a 'medical leave' through Sedgwick, or long-term employees who 'don't deal with' leaves frequently."  ECF No. 87 at 7 (citing ECF No. 89-2 at 13-14).  "Ms. Jones states she would assist such employees to determine if they 'need to go on a leave'" and that "[s]uch leaves would constitute protected time" but that "the attendance policy applies equally to all associates."  *Id.* (citing ECF No. 89-2 at 13-14).  Defendant also asserts that the "override" referenced by Plaintiff is called the "extraordinary circumstances" approval and that "[i]t would be unusual and unexpected for [this] exception to be used in Plaintiff's case."  *Id.* at 8 (citing ECF No. 89-2 at 23-25).  These competing assessments raise questions of fact for a jury.

The Court thus declines to grant summary judgment to either party on this claim given multiple disputes of material fact, as discussed above and on the record.

**B. Retaliation – WLAD**

Under WLAD, an employee may establish a retaliation through the *McDonnell Douglas* burden-shifting test. *Milligan v. Thompson*, 42 P.3d 418, 424 (Wash. Ct. App. 2002). A plaintiff must show that "(1) he engaged in a statutorily protected activity, (2) [the defendant] took adverse employment action against him, and (3) there is a causal link between the activity and adverse action." *Id.* (citation omitted). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to present evidence of a legitimate, nonretaliatory reason for its actions, and then the plaintiff must present evidence that the reason is pretextual. *Id.*

RCW 49.60.210 establishes three categories of whistleblowing activities protected under WLAD. As relevant here, the first category protects an employee against the "unfair practices" of discrimination or discharge for opposing "practices forbidden" by RCW 49.60. RCW 49.60.210(1). With regard to "unfair practices of employers," these "practices forbidden" include discrimination by an employer based on an individual's "age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability." RCW 49.60.180(1)-(4).

ORDER - 16

Because the same analysis applies for this claim as for the Title VII

retaliation claim, the Court declines to grant summary judgment to either party on

this claim given multiple disputes of material fact.

### C. Wrongful Discharge in Violation of Public Policy

Defendant seeks summary judgment on the wrongful discharge claim on the

same basis as the retaliation claims—"Plaintiff cannot show evidence of caution,

and, even if she could, Defendant has ample evidence of a legitimate,

nonretaliatory reason for Plaintiff's termination in the form of her attendance

policy violation." ECF No. 67 at 16. Plaintiff, in turn, seeks summary judgment

on this claim in its entirety, or in part, on the basis that "[t]he first and second

elements are undisputedly met" and "[t]he timing and knowledge of ASM

Escobar's action supports this element." ECF No. 74 at 17.

 "[T]he tort for wrongful discharge in violation of public policy has

generally been limited to four scenarios:"

> (1) where employees are fired for refusing to commit an illegal act;
> (2) where employees are fired for performing a public duty or
> obligation, such as serving jury duty;
> (3) where employees are fired for exercising a legal right or privilege,
> such as filing workers' compensation claims; and
> (4) where employees are fired in retaliation for reporting employer
> misconduct, i.e., whistle-blowing.

ORDER - 17

*Martin v. Gonzaga Univ.*, 425 P.3d 837, 843 (Wash. 2018) (quoting *Gardner v. Loomis Armored, Inc.*, 913 P.2d 377, 379 (Wash. 1996)) (quotation marks omitted) (paragraph breaks added).

For a wrongful discharge claim that falls under one of these categories to be successful, a plaintiff must first show that the "discharge may have been motivated by reasons that contravene a clear mandate of public policy." *Id.* at 844 (quoting *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1089 (Wash. 1984)). "'The question of what constitutes a clear mandate of public policy is one of law' and can be established by prior judicial decisions or constitutional, statutory, or regulatory provisions or schemes." *Id.* (quoting *Dicomes v. State*, 782 P.2d 1002, 1006 (Wash. 1989)). A plaintiff's "mere opinion" about what constitutes a clear mandate of public policy will not suffice. *Id.*

After meeting that initial step, a plaintiff must "show that the public-policy-linked conduct was a 'significant factor' in the decision to discharge the worker . . . and may do so by circumstantial evidence." *Id.* (quoting *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 29, 32 (Wash. 1991)). If the plaintiff successfully presents a prima facie case, "the burden then shifts to the employer to 'articulate a legitimate nonpretextual[,] nonretaliatory reason for the discharge.'" *Id.* (quoting *Wilmot*, 821 P.2d at 29). This burden is one of production, not persuasion. In other words, "[t]he employer must produce relevant admissible

evidence of another motivation, but need not do so by the preponderance of evidence necessary to sustain the burden of persuasion, because the employer does not have that burden." *Wilmot*, 821 P.2d at 29 (citation omitted). If the employer succeeds in articulating such a reason, the burden shifts back to the plaintiff to demonstrate either that the reasons proffered are in fact pretextual, or that even if the employer's justification is legitimate, "the public-policy-linked conduct was nevertheless a substantial factor motivating the employer to discharge the worker." *Martin* 425 P.3d at 844 (quoting *Wilmot*, 821 P.2d at 31) (alteration omitted).

The parties do not dispute the first and second elements; Plaintiff reported employer misconduct and Plaintiff was discharged. Again, however, the parties dispute whether Plaintiff can establish causation and, if so, whether Defendant has evidence of another motivation. ECF No. 67 at 15; ECF No. 74 at 17. In particular, Defendant asserts that Plaintiff cannot rely solely on temporal proximity. ECF No. 67 at 17. However, Washington courts have found temporal proximity can be used to establish a prima facie case. *See Mackey v. Home Depot USA, Inc.*, 459 P.3d 371 (Wash. Ct. App. 2020) ("Here, [the plaintiff's] termination occurred just 12 days after she complained to [the store manager] about [another manager's] behavior. This proximity in time between the complaint and the termination is sufficient to create a reasonable inference that, for purposes of showing a prima facie case, [the plaintiff's] complaint was a significant factor in

the decision to terminate [the plaintiff].").  While temporal proximity can be used

to establish a prima facie case, it is not sufficient to show that retaliation was a

significant motivating factor in the termination.  *Id.* at 387 ("But in the pretext step,

the employee has the burden of establishing a question of fact as to motivation

regardless of the employer's evidence that there was a legitimate,

nondiscriminatory reason for the termination.  That burden necessarily must

involve more than mere temporal proximity.").  While Defendant asserts that

Plaintiff has "nothing more than temporal proximity," ECF No. 67 at 16, Plaintiff

has also presented evidence of other employees with five or more occurrences who

were not terminated, as noted above and discussed on the record.

Because the analysis here is substantially similar to that of the retaliation

claims, the Court declines to grant summary judgment to either party on this claim

given multiple disputes of material fact.

**D. Negligent Supervision**

Defendant moves for summary judgment on this claim on the basis that: (1)

the elements of the claim are not met and (2) the claim is duplicative of the

retaliation claims.  ECF No. 67 at 17-18.  Plaintiff states that she is moving for

summary judgment on this claim, ECF No. 74 at 2, but does not then address it in

her motion.

ORDER - 20

1      There are four elements in a Washington negligent supervision claim: (1) an

2  employee of the defendant acted outside the scope of her employment, (2) the

3  employee presented a risk of harm to others, (3) the employer knew or should have

4  known in the exercise of reasonable care that the employee posed a risk to others,

5  and (4) the employer's failure to supervise the employee was the proximate cause

6  of the plaintiff's harm.  *McDaniels v. Group Health Co-op.*, 57 F. Supp. 3d 1300,

7  1317 (W.D. Wash. 2014) (citing *Briggs v. Nova Servs.*, 147 P.3d 616, 622 (Wash.

8  Ct. App. 2006)).  The tort of negligent supervision is not a cognizable claim when

9  an employee acts within the scope of her employment.  *Richards v. Healthcare*

10  *Res. Grp., Inc.*, 131 F. Supp. 3d 1063, 1076 (E.D. Wash. 2015); *Evans v. Tacoma*

11  *Sch. Dist. No. 10*, 380 P.3d 553, 564 (Wash Ct. App. 2016) ("In fact, an injured

12  party generally cannot assert claims for negligent hiring, retention, supervision or

13  training of an employee when the employer is vicariously liable for the employee's

14  conduct.").

15      First, Defendant asserts "there is no evidence that Ms. Escobar acted outside

16  the scope of her employment with Walmart."  ECF No. 67 at 17.  The Amended

17  Complaint alleges that "[e]ach Defendant is, and at all times herein mentioned was,

18  an agent of the other and acting within the course and scope of their employment

19  with WALMART, INC. d/b/a WALMART #2269 and WAL-MART

20  ASSOCIATES, INC. in causing harm as alleged herein."  ECF No. 23 at 2-3 ¶ 5.

Plaintiff does not cite to any evidence that Ms. Escobar acted outside the scope of her employment. *See* ECF No. 84 at 20.

Second, Defendant asserts that Plaintiff has not established the other three elements, namely that "there is not evidence that Ms. Escobar posed a risk of harm to Plaintiff, much less that Walmart was or should have been aware of a risk of harm." ECF No. 67 at 18. Again, Plaintiff does not point to any evidence establishing these elements. *See* ECF No. 84 at 20.

Third, Defendant asserts that "Plaintiff's negligence claim is duplicative of her retaliation claims" and that a "duplicative negligent supervision and failure to train claim is properly dismissing in such cases." ECF No. 67 at 18. Defendants are correct that Washington courts have dismissed negligent supervision claims as duplicative of retaliation claims. *See Francom v. Costco Wholesale Corp.*, 991 P.2d 1182, 1193 (Wash. Ct. App. 2000) ("[T]he Francoms rely on the same facts to support both their discrimination claim and their negligent supervision or retention claim. Just as with their claim for negligent infliction of emotional distress, the claim is duplicative, and the superior court properly dismissed it."), *as amended on reconsideration* (Feb. 29, 2000); *Bradley v. Swedish Health Servs.*, 2023 WL 8879121 (W.D. Wash. Dec. 22, 2023) (same) (citing *Francom*, 991 P.2d at 1193).

The Court thus grants summary judgment to Defendants on the negligent supervision claim, as Plaintiff has not pointed to any evidence to establish the

ORDER - 22

elements of the claim and, even if Plaintiff had, Washington courts dismiss

negligent supervision claims if they are duplicative of discrimination claims.

### E. Respondeat Superior

Defendant seeks summary judgment on this claim on the basis that the Court

should grant summary judgment on the underlying claims and "[w]ithout an

underlying claim for relief, it logically follows that respondeat superior is

inapplicable." ECF No. 67 at 19.  Because the Court has declined to grant

summary on three of Plaintiff's claims, it declines to dismiss this claim.

### F. Defendants' Affirmative Defenses

#### 1.  *Bona fide reasons*

The Answer states that "Defendants acted with bona fide reasons for

believing that their conduct complied with the law and without malice or

recklessness toward Plaintiff's legal rights."  ECF No. 25 at 17 ¶ 109.

Plaintiff asserts this is not an affirmative defense.  ECF No. 74 at 18 (citing

*Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A

defense which demonstrates that plaintiff has not met its burden of proof is not an

affirmative defense.")).

Defendant, in turn, asserts that "[e]mployers may 'establish an affirmative

defense to punitive damages liability when they have a bona fide policy against

discrimination,'" and that "Walmart has multiple policies regarding discrimination

1   and retaliation, and it requires all employees to attend training regarding their

2   requirements."  ECF No. 87 at 15 (first quoting *Passantino v. Johnson & Johnson*

3   *Consumer Prods., Inc.*, 212 F.3d 493 (9th Cir. 2000); then citing ECF Nos. 69-1 at

4   5-7, 90 at 2-8 (Global Discrimination and Harassment Prevention Policy)).

5        In *Passantino*, the Ninth Circuit explained that there are two separate

6   inquiries when evaluating the availability of punitive damages in a Title VII case:

7   *first*, whether the underlying conduct was sufficiently culpable to warrant an award

8   of punitive damages; and *second*, if so, whether the employer has "establish[ed] an

9   affirmative defense to punitive damages liability," which arises "when they have a

10  bona fide policy against discrimination, regardless of whether or not the prohibited

11  activity engaged in by their managerial employees involved a tangible employment

12  action."  *Id.* at 515-16.

13       As for the first inquiry, "the standard governing the availability of punitive

14  damages in Title VII cases requires proof of 'malice or reckless indifference' to the

15  rights guaranteed by Title VII."  *Id.* at 516.  Thus, "an employer may be liable for

16  punitive damages in any case where it discriminates in the face of a perceived risk

17  that its actions will violate federal law.... [A]lthough egregious conduct could be

18  evidence of intent to break the law, such conduct [is] not required to establish

19  punitive damages liability.  Thus, in general, intentional discrimination is enough

20  to establish punitive damages liability."  *Id.* at 515 (simplified).  However,

ORDER - 24

*Passantino* also identified three scenarios in which punitive damages may be unavailable even if intentional discrimination is shown:

> [*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999)] acknowledged that there could be some instances in which intentional discrimination did not give rise to punitive damages liability. The Court set forth three areas in which the factfinder could find intentional discrimination but the defendant would nonetheless not be liable for punitive damages. First, if the theory of discrimination advanced by the plaintiff was sufficiently novel or poorly recognized, the employer could reasonably believe that its action was legal even though discriminatory. Second, the employer could believe it had a valid BFOQ [bona fide occupational qualification] defense to its discriminatory conduct. Third, in some (presumably rare) situations, the employer could actually be unaware of Title VII's prohibition against discrimination. Common to all of these exceptions is that they occur when the employer is aware of the specific discriminatory conduct at issue, but nonetheless reasonably believes that conduct is lawful. Under such circumstances, an employer may not be liable for punitive damages.

*Id.* Given the disputes of material fact, a reasonable juror could conclude that the evidence is sufficient to satisfy this first inquiry. As to the second inquiry, this turns on "[a] determination regarding the status of the principal actors," which "is crucial to the outcome," because although "*Kolstad* established that, under some circumstances, corporations may not be subject to punitive damages for actions taken by their 'managerial' employees, it did nothing to eliminate the rule established in earlier cases that an individual sufficiently senior in the corporation must be treated as the corporation's proxy for purposes of liability." *Id.* at 516. Given the disputes of material fact, the Court concludes this issue presents a question of fact for the jury.

ORDER - 25

*2.  Legitimate non-discriminatory factors/good faith/same action*

The Answer states that "[w]ithout assuming any burden of proof not imposed by law, Defendants' actions with regard to Plaintiff were based on legitimate nondiscriminatory factors, were taken in good faith, and Defendants would have taken the same actions regardless of Plaintiff's protected status or activities, if any."  ECF No. 25 at 18 ¶ 110.

Plaintiff asserts this is not an affirmative defense.  ECF No. 74 at 18 (citing *Zivkovic*, 302 F.3d at 1088).  Defendant responds that this is an applicable affirmative defense to punitive damages liability.  ECF No. 87 at 15. The same analysis with respect to the first affirmative defense applies here.  Given the disputes of material fact, the Court concludes this issue presents a question of fact for the jury.

*3.  Plaintiff failed to mitigate damages*

The Answer states that Plaintiff has failed to mitigate her alleged damages. ECF No. 25 at 18 ¶ 110.  "The burden of proving a failure to mitigate damages in an employment discrimination suit is on defendant."  *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978) (citation omitted).  "To satisfy this burden, defendant must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed

ORDER - 26

to use reasonable care and diligence in seeking such a position." *Id.* (citations omitted); *see also Burnside v. Simpson Paper Co.*, 832 P.2d 537, 529 (Wash. Ct. App. 1992) ("Neither party cites any Washington cases dealing directly with the issue of mitigation of damages in the context of an age discrimination claim, and we have found none.  Federal case law, however, places the burden of proving a failure to mitigate damages in an employment discrimination suit on the defendant."), *aff'd,* 864 P.2d 937 (Wash. 1994), and *abrogated on other grounds by Mackay v. Acorn Custom Cabinetry, Inc.*, 127 898 P.2d 284 (Wash. 1995).

Plaintiff asserts that she "is not seeking wage loss or economic damages, and therefore, this defense does not apply and should be stricken."  ECF No. 74 at 19. Defendants acknowledged they have "located no authority in the [Ninth] Circuit explicitly analyzing the failure to mitigate defense as applied to emotional distress damages, [but] other jurisdictions have held that that this practice is reasonable and permissible."  ECF No. 87 at 15.

Courts within the Ninth Circuit have held that a failure to mitigate damages does not apply to emotional distress damages.  *See, e.g.*, *E.E.O.C. v. Fred Meyer Stores, Inc.*, 954 F. Supp. 2d 1104, 1128 (D. Or. 2013) ("Title VII claimants do not have a duty to mitigate emotional damages."), *on reconsideration in part* (Sept. 19, 2013); *E.E.OC. v. Chris the Crazy Trader Inc.*, 2025 WL 958486, at *8 (D. Colo. Mar. 31, 2025) ("As an initial matter, the Court agrees with EEOC that a

mitigation of damages defense is available only when the lawsuit seeks backpay.") (citations omitted). Persuaded by these decisions, the Court grants summary judgment to Plaintiff on this defense and dismisses it.

> ### 4. *Plaintiff unreasonably failed to avail herself of the polices and procedures adopted by her employer/avoidable consequences doctrine*

Defendant "withdraws this defense." ECF No. 87 at 16. The Court thus grants summary judgment to Plaintiff on this defense and dismisses it.

> ### 5. *Failure to state a claim upon which relief can be granted*

Defendants "maintain[] this defense to preserve a potential judgment on the pleadings under FRCP 12(c)." ECF No. 87 at 16.

"Courts in the Ninth Circuit have routinely held that 'failure to state a claim' is not a proper affirmative defense." *Kaiser v. CSL Plasma Inc.*, 240 F. Supp. 3d 1129, 1134 (W.D. Wash. 2017) (citing *Vargas v. Cnty. of Yolo*, 2016 WL 3916329, 5 (E.D. Cal. July 19, 2016); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."). The Court thus grants Plaintiff's motion with respect to this affirmative defense and dismisses it.

## CONCLUSION

For the reasons explained on the record and discussed above, the Court grants in part and denies in part both motions.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, **ECF No. 67**, is **GRANTED in part and DENIED in part**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 74**, is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

DATED January 5, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 29